**RIO DELTA LAND COMPANY, Appellant,**

v.

**E. W. JOHNSON et al., Appellees.**

**No. 660.**

Court of Civil Appeals of Texas, Corpus Christi.

Dec. 30, 1971.

Rehearing Denied Jan. 13, 1972.

Atlas, Hall, Schwarz, Mills, Gurwitz & Bland, Harry L. Hall, McAllen, for appellant.

Sonfield & Hasse, Robert L. Sonfield, Brownsville, for appellees.

## OPINION

NYE, Chief Justice.

This is a suit to set aside a Sheriff's sale of land (sometimes called the third suit). The trial court granted a summary judgment against Rio Delta Land Company the plaintiff and in favor of John S. Caputa and other defendants. Rio appeals.

E. W. Johnson and wife obtained a judgment against Rio in the amount of $15,210.00, interest and costs, in a prior separate suit (sometimes called the first suit). Rio appealed to this Court without obtaining a supersedeas bond. During the course of the appeal of this first suit, the Johnsons levied execution on land owned by Rio. This land was sold by the Sheriff to the Johnsons who purchased the land for the amount of their judgment. Thereafter, Rio failed to file an appellants' brief in the Court of Civil Appeals in the first suit. This Court, on motion filed by the Johnsons, dismissed the appeal. In the meantime, the Johnsons sold the land to John S. Caputa, appellee. He in turn sold lots to various purchasers. Nearly two years after the subject Sheriff's sale, Rio brought this suit to cancel the Sheriff's deed, contending principally that the Sheriff's sale was

irregular because of lack of proper notice; that the property was sold at a grossly inadequate price; and that Caputa the subsequent purchaser had actual knowledge or was charged with knowledge of the irregularities, making the sale voidable. Numerous affidavits have been filed by Rio in opposition to the motion for summary judgment. We believe that the facts contained in the affidavits raise a genuine issue of fact that must be tried before the trier of facts. Rule 166–A, Texas Rules of Civil Procedure.

It is uncontradicted that proper notice of the sheriff's sale as required by Rule 647, T.R.C.P., was not given by the sheriff preparatory to the execution sale. The publication of the notice was made on August 15, 1968, August 22, and the third notice on August 29. The sale was had on September 3, 1968, less than twenty days from the date of the first notice. Appellee admits that written notice to the appellant was not given until August 19, 1968. The appellants deny under oath that any notice was ever received by them.

█ Generally, irregularities in a sheriff's sale standing alone might not warrant the setting aside of an execution sale. However, when such irregularity is coupled with a grossly inadequate purchase price, the irregularity becomes material, giving rise to a cause of action to set aside the sale. Steffens v. Jackson, 16 Tex.Civ. App. 28, 41 S.W. 520 (1897, err. ref'd); Allen v. Stephanes, 18 Tex. 658; Nance v. Currey, 257 S.W.2d 847 (Tex.Civ.App.— Dallas 1953).

The purchase price at the sheriff's sale (by the Johnsons) was $15,900.00, the amount of the judgment. Rio's affidavits from two witnesses placed the value of the property in excess of $500,000.00. Appellees attack these affidavits as being insufficient to raise a fact issue of value because they say they are mere conclusions and opinions of the witnesses, citing Gibbs v. General Motors Corporation, 450 S.W.2d 827 (Tex.Sup.1970). However there were other affidavits filed by two other witnesses that say that appellee Caputa had sold a number of lots out of the land in question for $1700.00 each. (Ninety lots according to one witness, and 1100 lots in the area in question by another witness). Even using the lower number of 90 lots sold out of the land in question, this would make a total sales price of $153,000.00. Appellees argue on the other hand that in a suit filed by Rio (hereafter referred to as the second suit) immediately following the sheriff's sale, Rio contended that they were damaged in the amount of $2,500.00 because of the sheriff's sale. Therefore they say that the $15,900.00 sale price was not unreasonable under the circumstances. All of this evidence indicates a conflict as to the value of the land. It is not up to us to weigh the summary judgment evidence, but only determine whether the summary judgment record establishes as a matter of law that no genuine issue of fact has been raised as to a grossly inadequate purchase price for the property in question. We hold that such an issue as to the irregularity of the sheriff's sale and to the inadequacy of the price paid for the land has been raised by the summary judgment proof.

█ Appellees next contend that the summary judgment evidence is sufficient to establish that appellees were innocent purchasers for value as a matter of law and that summary judgment was therefore proper. The Johnsons did not join in the motion for summary judgment. The trial court severed Rio's cause of action against the Johnsons from Rio's cause of action against the appellees. The Johnsons were the judgment creditors in the first suit and purchased Rio's land at the sheriff's sale. The sheriff's deed shows on its face the irregularity of the notice. Where a judgment creditor becomes the purchaser at an execution sale, he is deemed to have notice of all of the errors and irregularities that occurred in the proceedings or in the judgment itself. Stroud v. Casey, 25 Tex. 740. If the judgment creditor purchased the land at an execution sale and pays the purchase

price by crediting the judgment with the amount of his bid, he is not an innocent purchaser for value. 24 Tex.Jur.2d pp. 644–645, § 179, Executions, and authority cited therein. Here the appellees purchased the property in question from the Johnsons and contend that even if the Johnsons were charged with notice of the irregularities that render the sale voidable, nevertheless appellee is an innocent purchaser unaffected by the irregularity since he purchased the land in question without actual notice.

The summary judgment evidence establishes that Caputa had constructive notice of the irregularities that led up to the execution sale. The lack of sufficient notice of the sale both by publication and as to notice mailed to Rio by the sheriff, clearly appear in the deed to the Johnsons. The deed was filed for record on September 19, 1968. Caputa did not receive his deed from the Johnsons until September 26, 1968.

" 'Notice in law is of two kinds—actual and constructive. * * * In common parlance "actual notice" generally consists in express information of a fact, but in law the term is more comprehensive. In law whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand, which if pursued by the proper inquiry the full truth might have been ascertained. Means of knowledge with the duty of using them are in equity equivalent to knowledge itself. * * * *So that, in legal parlance, actual knowledge embraces those things of which the one sought to be charged has express information, and likewise those things which a reasonably diligent inquiry and exercise of the means of information at hand would have disclosed.'* " (Emphasis supplied.)

Hexter v. Pratt, 10 S.W.2d 692 (Tex.Com. App.1928); and Article 6646, Vernon's Ann.C.S. This above language was cited with approval by the Supreme Court in Champlin Oil & Refining Company v. Chastain, 403 S.W.2d 376 (Tex.Sup.1965) and in Woodward v. Ortiz, 150 Tex. 75, 237 S.W.2d 286 (1951).

The affidavits of two witnesses raised fact issues that would show that Caputa also knew of the grossly inadequate price paid by the Johnsons for the land in question. Caputa had sold 90 of the lots for approximately $153,000.00. Caputa paid the Johnsons $18,200.00 for the land. In addition, Caputa had other constructive notice of the defective sale because Rio had filed suit against the sheriff (the second suit) to set aside the sale in question. A lis pendens notice of this second suit was also filed of record[1] on September 11, 1968.

Finally, the appellees assert that even if there were fact issues as to material irregularities in the sale of the property, such a cause of action or complaint was, as a matter of law, waived by the acts and conduct of Rio. Rio, they say, is estopped to present any such irregularities as a defense to this case; they are guilty of laches and stale demand.

The summary judgment evidence shows that Caputa created a subdivision out of the property known as South Shores Subdivision, Unit #1. A map or plat thereof was recorded on August 20, 1969. This suit was not filed until July 15, 1970, almost 22 months after the sheriff's sale of the property. In the meantime many of these lots have been sold to third parties. Appellees further point out that Polk Hornaday was the attorney of record for Rio in the first suit and on appeal to the Court of Civil Appeals before the case was dismissed on December 31, 1968. This same attorney was at the courthouse and was present during the sheriff's sale on September 3, 1968. He made no complaint of any irregularity. Eight days later, however, on September 11, attorney Hornaday filed suit for Rio against the sheriff to set aside the sheriff's deed. Lis pendens notice of this suit was filed of record September 11, 1968. Appellees suggest that waiver and estoppel are applicable here because from September 3, 1968 until

---

1. This second suit was ultimately dismissed for lack of prosecution.

July 15, 1970 Rio made no character of objection or protest to appellee Caputa with respect to the sale of the property, although they certainly had knowledge that Caputa was engaged in the developing of a subdivision and selling lots therein to the public.

Attorney Hornaday in his affidavit states, that he was in the courthouse on the afternoon of the sale in question on other business. He heard that the property of Rio was to be sold under execution. He categorically denied that his appearance at the place where the sale was being held was as an attorney representing Rio. He states that he was not authorized to appear or represent Rio nor did he acquiesce in the proceedings that took place during the sale.

█ In order to establish estoppel there must be a false representation or concealment of material facts; it must have been made with knowledge (active or constructive) of the material fact. The party to whom it was made must have been without knowledge or the means of knowledge of the true facts. It must have been made with the intention that it should be acted on, and finally the party to whom it was made must have relied on it or acted on it to his prejudice. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952). Before an estoppel can arise as a matter of law, there must be certainty to every intent, and the facts alleged to constitute estoppel are not to be taken by argument or inference. Red Jacket Manufacturing Company v. Adams, 346 S.W.2d 897 (Tex.Civ.App.—El Paso 1961, n. r. e.) and A. R. Clark Investment Company v. Green, 375 S.W.2d 425 (Tex.Sup.1964).

█ Waiver is an intentional release, relinquishment, or surrender of a right that is at the time known to the party making it. In order to constitute a waiver it is essential that there be an existing right, benefit or advantage, a knowledge (actual or constructive) of its existence, and an actual intention to relinquish it. It must be a voluntary act with full knowledge of the facts. 60 Tex.Jur.2d Waiver pp. 181–200.

The record shows that attorney Hornaday who represents Rio in the first and second suit, withdrew as attorney for Rio on September 12, 1968. Rio's stockholders for the most part lived out of the State of Texas. Appellees' argument concerning limitations, laches, waiver and estoppel and stale demand, all are in the category that requires a determination of all of the facts at a full trial. The summary judgment record is not conclusive in this respect. We have reviewed all of the evidence and are convinced that appellees have failed to demonstrate that there is no genuine issue as to any material fact that would entitle them to a judgment against appellees as a matter of law. All of the asserted defenses raised by appellees may ultimately prevail, but based on the record that is before us, they are not entitled to a summary judgment.

█ It has been brought to the attention of this Court that many subsequent purchasers of lots out of the land in question may be innocent purchasers for value. Their rights will have to be protected. Until all necessary and indispensable parties have been joined as parties to this suit or such innocent purchasers' land is excluded from this controversy, the trial court in the exercise of its equitable powers, may require amendments to the pleadings in order to determine all of the issues that may be brought before the Court.

█ The Court in rendering its summary judgment for the appellees, cancelled lis pendens notice filed by the appellants. Article 6640, V.A.C.S., authorizes the filing of a lis pendens notice during the pendency of any suit or action involving the title of real estate or in a suit which seeks to establish any interest or right therein. We hold that the trial court erred in cancelling appellants' notice. The notice is hereby ordered reinstated until a final judgment is had on the merits.

The judgment of the trial court is reversed and the cause is remanded for trial.